UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEPHEN HINES,                          )       Case No. 1:09CV2528
                                        )
            Petitioner,                 )       JUDGE SOLOMON OLIVER, Jr.
                                        )
      v.                                )       Magistrate Judge George J. Limbert
                                        )
MARGARET BRADSHAW, Warden,              )
                                        )
            Respondent.                 )       **REPORT AND RECOMMENDATION**
                                        )       **OF MAGISTRATE JUDGE**
                                        )
                                        )

      Petitioner Stephen Hines ("Petitioner") has filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional

violations that occurred during his Cuyahoga County, Ohio Court of Common Pleas conviction for

drug trafficking, possession of drugs, and possession of criminal tools.  ECF Dkt. #1.  On February

25, 2010, Respondent Margaret Bradshaw ("Respondent") filed a Return of Writ.  ECF Dkt. #5.  On

November 1, 2010, Petitioner filed a traverse.  ECF Dkt. #19.

      The case was referred to the undersigned for a Report and Recommendation.  For the

following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its

entirety with prejudice:

**I.      SYNOPSIS OF THE FACTS**

      The Ohio Court of Appeals set forth the facts of this case on direct appeal.  These binding

factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v.*

*Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set forth by

the Ohio Court of Appeals, the facts are:

      {¶ 2} On April 9, 2003, law enforcement officers began conducting surveillance of a
      suspected drug dealer at a hotel in Orange, Ohio. Officers observed several people
      coming and going from the hotel room under investigation, who were using a blue

Caravan. On April 10, 2003, a tan Toyota Camry, later identified as defendant's car, was seen entering the hotel parking lot around 1:00 a.m., and its occupants eventually got into the blue Caravan and drove off. Officers observed Reynold's plastic wrap boxes on the back seat of the Camry. The Camry was again observed at the hotel later that evening. Defendant was identified as the driver of the Camry. Officers followed the Camry to 5541 Grasmere Road in Maple Heights, then to East 36th and Albay in Cleveland, and back to the address on Grasmere.

{¶ 3} Officers observed one of the male occupants of the Camry take a garbage bag towards the curb and then the Camry departed. The officers retrieved the garbage bag, which contained, among other things, ziplock bags and residue of marijuana.

{¶ 4} On April 11, 2003, the Camry was again observed at the hotel under surveillance. A passenger of the Camry went inside the hotel and returned carrying three or four small bags and placed them inside the Camry. The Camry with two occupants was followed to 5541 Grasmere. The passenger got out and leaned into the back seat and both occupants entered the house. The Camry left with only one occupant.

{¶ 5} Monica James, aka Monica Mason rented the house at 5541 Grasmere and listed Anthony Mason as a co-tenant. Defendant did not claim to reside at that location.

{¶ 6} Officers articulated their observations in an affidavit for a search warrant, specifically identifying the Toyota Camry and defendant. Police obtained a search warrant for 5541 Grasmere and executed the search on April 14, 2003. The warrant authorized the search of 5541 Grasmere, any vehicles on the premises, and all persons therein. Marijuana was found on the premises in a duffle bag (11,046.6 grams), in the kitchen sink (1.09 grams), in a black plastic bag (8,851 grams), on the kitchen table (13.60 grams), and in the living room (149.48 grams). The marijuana, drug paraphernalia, and defendant's car were seized and defendant and others were arrested on the scene.

{¶ 7} Co-defendant Mason testified on behalf of the State as part of a plea bargain, which reduced the charges against him. According to the record, Mason's plea agreement depended on him telling the truth. Prior to trial, Mason told numerous lies and committed perjury in an effort to have his case transferred to juvenile court. It was established that Mason is Jamaican and entered the country legally with a passport. He lived in New York and came to Cleveland where he obtained false identification. His alleged aunt, Monica James, gave him two keys to 5541 Grasmere where he stayed periodically. Mason met defendant through his aunt. Mason claims defendant would have him check on marijuana that was being stored at 5541 Grasmere in a duffle bag in the basement.

{¶ 8} Mason said he helped defendant and Roy "take down" the marijuana prior to being arrested on April 14, 2003. This meant breaking the marijuana down from condensed bricks to one-pound packages. Mason described his role and the process. He explained that he threw the "shakes" in the garbage. Defendant gave Mason a half pound of marijuana for his help.

{¶ 9} Mason also described his activities in the days leading up to April 14, 2003. He testified that defendant picked him up in the Camry and picked up Roy at the hotel. The group went to a club in Roy's Caravan. Mason also gave another man, identified as co-defendant Grant, a key to 5541 Grasmere and later confirmed the key from property seized from Grant by the police.

-2-

{¶ 10} On cross-examination, defense counsel attempted to question Mason about possible juvenile rape charges made against Mason in New York. The court sustained the State's objection. There is no proffer of this testimony in the record nor any document reflecting such a conviction.

{¶ 11} The trial court denied certain of defendant's motions that are relevant in this appeal: his motion to dismiss for lack of speedy trial; his motion to suppress evidence; his motion for mistrial or for severance; and his motion for acquittal.

{¶ 12} Defendant was tried with two other co-defendants. The trial court granted co-defendant Richard's motion for acquittal. The jury found defendant guilty on all three counts but found co-defendant Grant not guilty. Defendant was sentenced and commenced his appeal.

*State v. Hines*, 2004 WL 2340167 at ¶¶ 2-12 (Ohio App. 8 Dist. Sept. 30, 2004),  unreported; ECF

Dkt. #5, Ex. 19.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

On April 21, 2003, the Cuyahoga County, Ohio prosecuting attorney filed an indictment

charging Petitioner with: (Count One) Drug Trafficking, in violation of O.R.C. § 2925.03, with a

schoolyard specification; (Count Two) Possession of Drugs, in violation of O.R.C. § 2925.11; and

(Count Three) Possession of Criminal Tools, in violation of O.R.C. § 2923.24.  ECF Dkt. #5, Ex.

1.  Defendant proceeded with retained trial counsel James R. Willis.  ECF Dkt. #5, Ex. 2.

On May 16, 2003, Petitioner filed a motion to suppress evidence seized incident to his arrest,

from his vehicle, and from the residence described as 5541 Grasmere, Maples Heights, Ohio ("the

Grasmere residence").   ECF Dkt. #5, Ex.  3.   The state opposed the motion, contending that

Petitioner had not demonstrated standing with respect to the Grasmere residence.  ECF DKt. #5, Ex.

4.  The state filed an additional brief arguing that probable cause supported the warrant that was

issued in the case.  ECF Dkt. #5, Ex. 5.  Petitioner filed a reply addressing both issues.  ECF Dkt.

#5, Ex. 6.  On June 9, 2003, the trial court issued an entry noting that it had conducted a hearing on

Petitioner's motion to suppress.  ECF Dkt. #5, Ex. 7.  The entry indicates that the Court denied the

motion after finding that Petitioner had no standing and that probable cause existed to seize the car.

*Id.*

On June 26, 2003, Petitioner filed an objection to any continuances of the trial in his case.

ECF Dkt. #5, Ex. 8.  On July 2, 2003, the trial court denied Petitioner's motion.  ECF Dkt. #5, Ex.

9.

On August 7, 2003, the trial court issued an entry indicating that a jury had found Petitioner guilty as charged in the indictment.  ECF Dkt. #5, Ex. 10.

On August 12, 2003, prior to sentencing, Petitioner filed an Alternative Motion for A Judgment of Acquittal or For a New Trial, arguing:

1. The Court erred in ruling the Defendant lacked standing to move for the suppression of any evidence seized in the wake of the execution of the search warrant and the Defendant's arrest.

2. The Defendant was denied a speedy trial, when despite the Defendant's objections, the case was continued to and actually commenced on a date that was beyond the time parameters set forth in Revised Code of Ohio § 2945.71, et. seq.

3. The Defendant was denied a fair trial and due process when the Court unduly restricted the defense cross-examination of the witness Anthony Mason - - an admitted perjurer.

4. The Court erred and the Defendant's right of confrontation was traversed when the Court *forbade* the defense from inquiring into an alleged criminal incident which occurred in New York City. This was an incident the witness admitted he was indeed aware of.

5. Given the Court's decision to grant (at the close of the State's case) an acquittal on all charges to a co-defendant, the risk that the jury read into the elimination of the acquitted defendant that *the Court* indeed *believed* the testimony of witness, Anthony Mason, this became all the more irresistible and irrepressible. With this being so, the denial of the Defendant's Motion for a Mistrial or for a Severance cannot survive meaningful scrutiny.

6. The truly flawed argument (repeatedly emphasized in several segments of the prosecutor's summation) that *the Court* itself, not the prosecutor, would determine whether Anthony Mason was telling the truth, and thus resolve whether he would be charged with multiple admitted acts of perjury, it follows the Defendant was devastatingly prejudiced thereby.

7. The Court erred when it fatally *endorsed* the State's argument that the Court would determine whether the witness, Anthony Mason, was telling the truth in his testimony and in his statement that not only inculpated the accused, Stephen Hines, but literally exonerated the others on trial.

8. The verdicts convicting the Defendant of all charges were not based on evidence sufficient to support findings of guilt beyond a reasonable doubt.

9. Other errors on the face of the Record.

ECF Dkt. #5, Ex. 11 (emphasis in original).  On August 19, 2003, the state filed a brief in opposition.  ECF Dkt. #5, Ex. 12.  On August 21, 2003, the trial court denied Petitioner's motion.

ECF Dkt. #5, Ex. 13.

On August 21, 2003, the trial court imposed an aggregate term of 10 years of imprisonment.

ECF Dkt. #5, Ex. 14.  The trial court appointed Carolyn Kay Ranke as appellate counsel.  *Id*.

**B.**     **Direct Appeal**

On September 19, 2003, Petitioner filed a notice of appeal to the Ohio Court of Appeals for

the Eighth District.  ECF Dkt. #5, Ex. 15. On January 23, 2004, Petitioner filed a brief on the merits,

raising the following assignments of error:

1.  THE DEFENDANT WAS DENIED A SPEEDY TRIAL WHEN, DESPITE THE DEFENDANT'S "MOTION TO ADVANCE" AND "WRITTEN OBJECTIONS" TO ANY DELAYS, THE CASE WAS, NONETHELESS, CONTINUED TO (AND ACTUALLY COMMENCED ON), A DATE THAT WAS BEYOND THE TIME PARAMETERS SET FORTH IN R.C., § 2945.71, *ET. SEQ* .

2.  THE COURT ERRED IN RULING THE DEFENDANT LACKED STANDING TO MOVE FOR THE SUPPRESSION OF (AND FOR THE RETURN OF) THE PROPERTY SEIZED OSTENSIBLY AS EVIDENCE IN THE WAKE OF: (1) THE EXECUTION OF "THE" SEARCH WARRANT; (2) THE DEFENDANT'S SIMULTANEOUS ARREST; (3) THE WARRANTLESS SEARCHES MADE OF HIM AND HIS VEHICLE; AND (4) THE ACTUAL SEIZURE OF THE VEHICLE AND ITS CONTENTS .

3.  THE DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS WHEN THE COURT UNDULY RESTRICTED THE DEFENSE CROSS-EXAMINATION OF THE STATE'S CHIEF WITNESS, ANTHONY MASON - - AN ADMITTED PERJURER, WHOSE *ACCUSATORY* TESTIMONY WAS THE SOLE CONSIDERATION *PROVIDED BY HIM* IN EXCHANGE FOR HIS BARGAINED SENTENCE.

4.  THE PROSECUTOR WAS GUILTY OF MISCONDUCT WHEN, IN THE WAKE OF CERTAIN IMPERMISSIBLY ASKED QUESTIONS PUT TO THE WITNESS ANTHONY MASON, SHE LITERALLY RESOLVED OR TRANSFORMED HERSELF INTO AN UNSWORN WITNESS FOR THE STATE.

5.  THE COURT ERRED WHEN IT REFUSED TO DECLARE A *MISTRIAL* IN THE WAKE OF CERTAIN EGREGIOUSLY INAPPROPRIATE AND TOTALLY INDEFENSIBLE QUESTIONS, COUNSEL FOR A CO-DEFENDANT, ASKED A POLICE OFFICER.

6.  GIVEN THE EASILY PREDICTED DECISION BY THE TRIAL COURT (WHICH COUNSEL-OPPOSITE HAD TO KNOW WAS FOREORDAINED) TO GRANT OUTRIGHT ACQUITTALS TO A CO-DEFENDANT, AND GIVEN THE VERY SUBSTANTIAL RISK THE JURY WOULD SURELY READ INTO THE SUDDEN ELIMINATION OF THE ACQUITTED DEFENDANT THAT *THE COURT* INDEED *BELIEVED* THE TESTIMONY OF THIS WITNESS, IT FOLLOWS THE DENIAL OF THE DEFENDANT'S MOTION FOR A MISTRIAL, OR FOR A SEVERANCE, CANNOT

-5-

SURVIVE MEANINGFUL SCRUTINY.

7. THE APPELLANT WAS DENIED DUE PROCESS WHEN COUNSEL FOR THE STATE, IN THE WAKE OF HER AWARENESS THAT THE STATE'S CHIEF WITNESS' CREDIBILITY HAD BEEN SERIOUSLY DAMAGED, PROCEEDED TO *VOUCH* FOR THE WITNESS' CREDIBILITY DURING HER SUMMATIONS.

8. THE COURT ERRED WHEN IT OPENLY AND NOTORIOUSLY ACTUALLY *ENDORSED* THE STATE'S ARGUMENT THAT: *THE COURT* WOULD DETERMINE WHETHER THE WITNESS, ANTHONY MASON, WAS TELLING THE TRUTH IN HIS TESTIMONY AND THAT HE WAS TELLING THE TRUTH.

9. THE VERDICTS CONVICTING THE DEFENDANT OF ALL THE CHARGES WERE NOT BASED ON EVIDENCE SUFFICIENT TO SUPPORT FINDINGS OF GUILT BEYOND A REASONABLE DOUBT.

ECF Dkt. #5, Ex. 16 (emphasis in original). Although Attorney Ranke signed the notice of appeal, Petitioner's original trial attorney, James Willis, signed the brief on the merits. *Id*. On April 12, 2004, the state filed a brief in response. ECF Dkt. #5, Ex. 17. On April 21, 2004, Petitioner filed a reply brief. ECF Dkt. #5, Ex. 18. On September 30, 2004 (journalized October 18, 2006), the appellate court affirmed the trial court's judgment. ECF Dkt. #5, Ex. 19.

**C.    Rule 26(A) Motion for Reconsideration**

On October 12, 2004, Petitioner filed a motion for reconsideration of its judgment on appeal. ECF Dkt. #5, Ex. 24. On October 18, 2004, the appellate court denied Petitioner's motion. ECF Dkt. #5, Ex. 26. Thereafter, on October 22, 2004, the state filed a brief in opposition. ECF Dkt. #5, Ex. 25.

**D.    Supreme Court of Ohio**

On November 29, 2004, now represented by Paul Mancino, Jr., Petitioner filed a notice of appeal and a brief in support of jurisdiction in the Supreme Court of Ohio, raising the following propositions of law:

Proposition of Law No. I

A DEFENDANT IS DENIED DUE PROCESS OF LAW WHERE A COURT RULES THAT A DEFENDANT LACKS STANDING TO MOVE FOR A SUPPRESSION OF EVIDENCE WHERE THE DEFENDANT IS SEIZED AT THE TIME OF THE EXECUTION OF A WARRANT TOGETHER WITH HIS VEHICLE AND WHERE HE HAD SUFFICIENT CONNECTION WITH THE SEIZED PREMISES

-6-

Proposition of Law No. II

> A DEFENDANT IS DENIED A SPEEDY TRIAL WHERE A DEFENDANT
> IS HELD IN JAIL BEYOND THE STATUTORY TIME LIMIT AND NO
> JUSTIFIABLE REASON EXISTS FOR EXTENDING THAT TIME.

Proposition of Law No. III

> A DEFENDANT IS DENIED DUE PROCESS OF LAW AND A FAIR
> TRIAL WHERE THE PROSECUTOR, UNDER THE GUISE OF
> QUESTIONING A WITNESS SPECIFIED TO FACTS IN AN UNSWORN
> METHOD.

Proposition of Law No. IV

> A DEFENDANT IS DENIED A FAIR TRIAL WHERE THE COURT
> REFUSES TO DECLARE A MISTRIAL WHERE TOTALLY IMPROPER
> QUESTIONS ARE ASKED BY A COUNSEL FOR A CO-DEFENDANT OF
> A POLICE OFFICER.

Proposition of Law No. V

> A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE
> PROSECUTOR, DURING CLOSING ARGUMENT VOUCHES FOR THE
> CREDIBILITY OF THE WITNESSES AND IN EFFECT STATES THAT
> DEFENDANT IS GUILTY.

Proposition of Law No. VI

> A DEFENDANT IS DENIED HIS CONSTITUTIONAL RIGHT OF
> CONFRONTATION AND CROSS-EXAMINATION WHERE
> LEGITIMATE CROSS-EXAMINATION HAD BEEN ATTEMPTED BUT
> CURTAILED BY THE COURT.

ECF Dkt. #5, Ex. 20, 21.  On December 29, 2004, the state filed a brief in response.  ECF Dkt. #5, Ex. 22.  On March 2, 2005, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #5, Ex. 23.

**E.      Rule 26(B) Application for Reopening Appeal**

On January 13, 2005, Petitioner filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Procedure.  ECF Dkt. #5, Ex. 27.  Petitioner asserted that his trial and appellate counsel were ineffective because:

- The first omission by trial counsel was that there was no motion for discovery and inspection.  Pursuant to Rule 16 of the Ohio Rules of Criminal Procedure a motion for discovery and inspection would require the prosecuting attorney to reveal certain information that the prosecutor was going to use at trial. No motion for discovery was filed on behalf of defendant. Consequently, counsel did not have that information.

-7-

- A second omission was that there was a failure of trial counsel to object to the testimony of Det. Mendolera. . . . First, in this case, there was no objection to the cell phone records, However, the more important problem was with the testimony from Mendolera concerning the cell phone records and what they meant. This should have been objected to. (Tr.1539-47), In addition, when Mendolera was also allowed to read the statement from a police and give his opinion concerning as to what the stash was, (Tr. 1540-41). This was improper and prejudicial testimony and should have been objected to by defense counsel.

- Lastly, counsel did not request nor seek an independent analysis or weighing of the drugs. The drugs barely exceeded the amount which mandated an automatic ten (10) year jail sentence. Counsel did not request an opportunity to weigh the drugs. Had the drugs weighed less than 20, 000 grams counsel could have prevailed on that issue. §2925.51 of the Ohio Revised Code allows the defendant, on request, to test the drugs. The drugs could have been weighed to show that the drugs weighed less than the amount claimed by the prosecutor. This was important in this case because drugs sometimes are contaminated moisture [sic] which will add to the weight.

    Counsel should have requested this and the failure to do so deprived defendant of effective assistance of counsel at trial. This issue could have been raised on the appeal.

- [B]eing represented by the same trial counsel on appeal would prevent counsel from claiming these errors.

ECF Dkt. #5, Ex. 27.  On May 25, 2005, the state filed a brief in opposition to Petitioner's application.  ECF Dkt. #5, Ex. 28.  On June 21, 2005, the appellate court denied Petitioner's application.  ECF Dkt. #5, Ex. 29.

On July 25, 2005, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #5, Ex. 30.  He filed a memorandum in support of jurisdiction asserting the following proposition of law:

A DEFENDANT IS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON APPEAL WHERE COUNSEL FAILS TO PRESENT ERRORS. OCCURRING DURING THE COURSE OF THE TRIAL WHICH ARE APPARENT ON THE FACTS OF THE RECORD.

ECF Dkt. #5, Ex. 31.  The state filed a waiver of memorandum in response.  ECF Dkt. #5, Ex. 32. On October 5, 2005, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #5, Ex. 33.

### F.  Petition for Post-conviction Relief

On February 12, 2004, while Petitioner's other appeals were pending, he filed a pro se petition for post-conviction relief pursuant to O.R.C. §2953.21.  ECF Dkt. #5, Ex. 34.  Petitioner

raised the following claims:

I.      PETITIONER STATES IN THIS CLAIM THAT KAMARIC SALMON, A.K.A., ANTHONY MASON WAS LED BY THE STATE OF OHIO'S PROSECUTOR, TO FABRICATE LIES AGAINST THE PETITIONER, IN AN ATTEMPT TO HAVE THE PETITIONER CONVICTED.  ABSENCE [SIC] THE FABRICATION AGAINST THE PETITIONER BY THE ALLEGED NAME STATED HEREIN, THE PETITIONER WOULD NOT HAVE BEEN FOUND GUILTY BY THE GRAND JURIES SITTING AT THE PETITIONER'S TRIAL IN THE HEREIN CASE.

II.     PETITIONER STATES IN THIS CLAIM THAT HE WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL, AND HIS RIGHTS TO DUE-PROCESS WERE VIOLATED, WHEN THE TRIAL COURT INADVERTENTLY ACCEPTED TESTIMONY OF KAMARIC S. SALMON A.K.A., ANTHONY MASON, WHICH HE ADMITTED IN A SWORN AFFIDAVIT THAT HE HAD FABRICATED LIES, AND WAS COERCED TO DO SO BY THE STATE OF OHIO'S PROSECUTOR, AND BY OFFICER JEFF CANTER, OF MAPLE HEIGHTS POLICE DEPARTMENT, AND BY OFFICER JAMES MENDOLERA, FROM THE GARFIELD HEIGHTS POLICE DEPARTMENT.

ECF Dkt. #5, Ex. 34.  On April 7, 2004, Petitioner filed a motion for summary judgment.  ECF Dkt. #5, Ex. 35. He then filed a motion for leave to amend his petition to state the following claims:

I.      THE TRIAL PROS. CREATED A STRUCTURAL DEFECT IN THE CONSTITUTION OF THE JURY TRIAL MECHANISM BY KNOWINGLY PERMITTING CO-DEFENDANT, ANTHONY MASON a.k.a. KAMARIC SALMON, TO GIVE FALSE TESTIMONY FOR PURPOSE OF OBTAINING A CONVICTION BEFORE A TRIAL BY JURY IN THE CASE STYLED: STATE OF OHIO, PLAINTIFF vs. STEPHEN HINES, DEFENDANT, CUYAHOGA COUNTY COMMON PLEAS COURT CASE NUMBER CR-436655.  THE FALSE TESTIMONY OF CO-DEFENDANT, ANTHONY MASON a.k.a. KAMARIC SALMON, BEFORE THE JURY TRIAL OF THE DEFENDANT MR. HINES, DISTORTED THE VERY STRUCTURE OF THE TRIAL BECAUSE IT CREATED THE RISK THAT THE JURY WILL CONVICT THE DEFENDANT MR. HINES. EVEN IF THE STATE HAS NOT MET ITS REQUIRED BURDEN OF PROOF.  THE TRIAL PROS. KNEW THAT THE STATE COULD NOT OBTAIN A CONVICTION WITHOUT THE FALSE TESTIMONY OF CO-DEFENDANT ANTHONY MASON a.k.a. KAMARIC SALMON THE TRIAL PROS. DENIED THE DEFENDANT-PETITIONER, MR. STEPHEN HINES, THE RIGHT TO A FAIR TRIAL IN DIRECT VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND DENIED THE DEFENDANT-PETITIONER, MR. HINES THE "EQUAL PROTECTION" OF LAWS, AND "DUE PROCESS OF LAWS" BILL OF RIGHTS: ARTICLE I, §§ 2, 10, AND 16 OF THE OHIO CONSTITUTION.

II.     PETITIONER-DEFENDANT, MR. STEPHEN HINES, STATES IN THIS CLAIM THAT KAMARIC SALMON, A.K.A. ANTHONY MASON WAS LED BY THE STATE OF OHIO'S PROSECUTOR TO FABRICATE LIES AGAINST THE PETITIONER, IN AN ATTEMPT TO HAVE HAVE [SIC] THE PETITIONER CONVICTED. ABSENCE [SIC] THE FABRICATION

-9-

AGAINST BY THE ALLEGED CO-DEFENDANT MR. ANTHONY MASON A.K.A. KAMARIC SALMON, THE PETITIONER-DEFENDANT MR. HINES WOULD NOT HAVE BEEN FOUND GUILTY BY THE GRAND JURIES SITTING. AT THE PETITIONER'S TRIAL IN THE HEREIN CASE DENYING THE DEFENDANT APPELLANT MR. STEPHEN HINES THE RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, BILL OF RIGHTS: ARTICLE I, §§ 10 AND 16, OF THE OHIO CONSTITUTION.

III.    DEFENDANT-PETITIONER, MR. STEPHEN HINES WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND HIS RIGHTS TO DUE PROCESS OF LAWS AND EQUAL PROTECTION OF LAWS, IN VIOLATION OF THE FOURTEENTH AMENDMENT CLAUSES OF THE UNITED STATES CONSTITUTION, OHIO BILL OF RIGHTS: ARTICLE I, §§ 2, 10, and 16, OF THE OHIO CONSTITUTION, WHEN THE TRIAL COURT INADVERTENTLY ACCEPTED TESTIMONY OF KAMARIC SALMON A.K.A. ANTHONY MASON, WHICH HE ADMITTED IN A SWORN AFFIDAVIT THAT HE HAD FABRICATED LIES AS INSTRUCTED BY THE POLICE DETECTIVE(S) AND THE CUYAHOGA COUNTY PROSECUTING ATTORNEY IN BUILDING A CRIMINAL CASE AGAINST THE DEFENDANT-PETITIONER TO OBTAIN A CRIMINAL CONVICTION CQ-DEFENDANT MR. KAMARIC SALMON A.K.A. ANTHONY MASON WAS COERCED TO DO SO BY THE STATE OF OHIO PROSECUTOR, AND BY OFFICER JEFF CANTER, OF THE MAPLE HEIGHTS POLICE DEPARTMENT, AND BY OFFICER JAMES MENDOLERA, FROM THE GARFIELD HEIGHTS POLICE DEPARTMENT. THE CONDUCT OF POLICE OFFICER'S CANTER, AND MENDOLERA AND THE CONDUCT OF THE STATE OF OHIO PROSECUTING ATTORNEY USING FALSE TESTIMONY TO OBTAIN A CONVICTION DENIED THE DEFENDANT-PETITIONER MR. HINES A FAIR TRIAL "DUE PROCESS OF LAW" AND "EQUAL PROTECTION OF LAWS."

ECF Dkt. #5, Ex. 36.  On June 25, 2004, the state filed a motion for summary judgment.  ECF Dkt. #5, Ex. 37.  Thereafter, Petitioner submitted supplemental evidence in support of his petition.  ECF Dkt. #5, Ex. 38.  He also opposed the state's motion for summary judgment.  ECF Dkt. #5, Ex. 39. On October 22, 2004, the state filed proposed findings of fact and conclusions of law.  ECF Dkt. #5, Ex. 40.  On November 15, 2004, Petitioner filed objections to the proposed findings of fact and conclusion of law.  ECF Dkt. #5, Ex. 41.  He also filed an objection and rebuttal to the state's motion for summary judgment and a memorandum in support of his own motion for summary judgment. ECF Dkt. #5, Ex. 42.  On December 27, 2006, Petitioner filed a motion for a judgment on the pleadings.  ECF Dkt. #5, Ex. 43.

On April 11, 2007, Judge Dick Ambrose of the Cuyahoga County Court of Common Pleas issued findings of fact and conclusions of law.  ECF Dkt. #5, Ex 44. Judge Ambrose dismissed the

-10-

petition for post-conviction relief without a hearing.  *Id.* at 16.  He granted the state's motion for summary judgment and denied Petitioner's motions for summary judgment and for judgment on the pleadings.  *Id.*

On May 10, 2007, Petitioner, represented by Paul Mancino, Jr., filed a notice of appeal.  ECF Dkt. #5, Ex. 45.  On June 15, 2007, Petitioner filed a brief on the merits and raised the following assignments of error:

> I.  DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT MADE A CREDIBILITY DETERMINATION  WHEN THAT COURT IS NOT THE SAME COURT THAT TRIED THE CASE.
>
> II.  DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO GRANT POST-CONVICTION RELIEF WHERE DEFENDANT'S CONVICTION WAS BASED ON PERJURED TESTIMONY.
>
> III.  DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS NOT AWARDED A NEW TRIAL WHERE HE PRESENTED EVIDENCE OF HIS ACTUAL INNOCENCE.

ECF Dkt. #5, Ex. 46.  On July 31, 2007, the state filed a brief in response.  ECF Dkt. #5, Ex 47.  On April 24, 2008, the Ohio Eighth District Court of Appeals affirmed the trial court's ruling dismissing the post-conviction petition.  ECF Dkt. #5, Ex. 48.

On May 5, 2008, Petitioner filed an application for reconsideration.  ECF Dkt. #5, Ex. 49. On May 15, 2008, the state filed a brief in opposition.  ECF Dkt. #5, Ex. 50.  On May 28, 2008, the appellate court denied petitioner's application.  ECF Dkt. #5, Ex. 51.

On July 9, 2008, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #5, Ex. 52.  He also filed a memorandum in support of jurisdiction, asserting the following propositions of law:

> I  WHEN A COURT OF APPEALS FAILS TO CORRECT A DUE PROCESS ERROR OF A TRIAL COURT'S ERRONEOUS DETERMINATION OF CREDIBILITY WHEN REVIEWING TRIAL COURT IS NOT THE SAME COURT THAT HELD THE ORIGINAL TRIAL, A DEFENDANT IS DENIED DUE PROCESS AND EQUAL PROTECTION OF LAW.
>
> II.  WHEN A CONVICTION IS BASED ON PERJURED TESTIMONY AND A TRIAL COURT AND APPELLATE COURT FAILS TO GRANT POST CONVICTION RELIEF APPELLANT IS DENIED DUE PROCESS AND EQUAL PROTECTION OF LAW.

-11-

III.    WHEN A DEFENDANT IS NOT GRANTED RELIEF AFTER HE PRESENTS EVIDENCE OF ACTUAL INNOCENCE TO A REVIEWING COURT HE IS DENIED DUE PROCESS AND EQUAL PROTECTION OF LAW.

ECF Dkt. #5, Ex. 53.  The state filed a waiver of memorandum in response.  ECF Dkt. #5, Ex. 54.

On October 29, 2008, the Supreme Court of Ohio dismissed the appeal as not involving a substantial

constitutional question.  ECF Dkt. #5, Ex. 55.

**G.      28 U.S.C. § 2254 Petition**

On October 27, 2009, Petitioner filed the instant petition for a writ of habeas corpus.  ECF

Dkt. #1 at 16; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S.

266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it

to prison authorities).  Petitioner has raised the following grounds for relief:

**GROUND ONE:**      PETITIONER WAS DENIED A FUNDAMENTALLY FAIR TRIAL AND DUE PROCESS OFLAW IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Supporting Facts:      Petitioner was not afforded a full and fair opportunity to litigate his Fourth Amendment claims, thus requiring an evidentiary hearing, where the state court's adjudication that he lacked standing to move for the suppression of evidence when he was seized at the time of the execution of a warrant together with his vehicle and where he had sufficient connection with the seized premises.

**GROUND TWO:**      PETITIONER WAS DENIED A FUNDAMENTALLY FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Supporting Facts:      1. the State specified to facts in an unsworn method under the guise of questioning its chief witness;

2. the trial court refused to declare a mistrial where improper questions are asked by counsel for co-defendant of a police officer;

3. during closing arguments, the State vouched for the credibility of its chief witness in a manner that in effect stated that Petitioner was guilty; and

4. there was insufficient evidence to sustain a conviction and proof against Petitioner is based on perjured testimony.

-12-

**GROUND THREE:**   PETITIONER WAS DENIED RIGHT TO SPEEDY [SIC] IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Supporting Facts:   Petitioner was denied the right to speedy trial where the state's adjudication permitted tolling for extending the time as a result of a necessary pretrial motion.

**GROUND FOUR:**   PETITIONER WAS DENIED HIS RIGHT OF CONFRONTATION AND CROSS-EXAMINATION IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Supporting Facts:   Petitioner was denied his constitutional right of confrontation and cross-examination where legitimate cross-examination had been attempted but curtailed by the court.

**GROUND FIVE:**   PETITIONER WAS DENIED HIS RIGHT OF CONFRONTATION AND CROSS-EXAMINATION IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Supporting Facts:   Petitioner was denied his constitutional right of confrontation and cross-examination where legitimate cross-examination had been attempted but curtailed by the court.

**GROUND SIX:**   PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Supporting Facts:   Petitioner was denied received [sic] ineffective assistance of counsel during trial and on appeal and raises three sub-claims of ineffective assistance of trial counsel which he claims should have been raised upon appeal: (1) trial counsel failed to conduct discovery prior to trial; (2) trial counsel failed to object to the testimony of Detective Mendolera with regard to cell phone records; and (3) trial counsel failed to request an independent analysis and weighing of the drugs seized by the police.

**GROUND SEVEN:**   PETITIONER WAS DENIED DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Supporting Facts:   Petitioner was denied due process of law when the state post-conviction court made a credibility determination of the State's chief witness when that court was not the same court that tried the case. In his post-conviction petition, Petitioner argued that his conviction was based entirely upon the State's chief witness, Mason, falsely implicating him in the drug activity. The state knew Mason was lying when it put him on the stand. The petition alleged that Petitioner was denied his constitutional rights in that: (1) Mason was permitted to testify falsely; (2) the state led Mason to give false testimony; and (3)

-13-

> the trial court erred in permitting Mason's testimony. In support of these claims, Petitioner filed an affidavit from Mason with his petition, in which Mason completely recanted his statements to the police and his testimony at trial. Mason's affidavit states that the police coerced his false testimony with threats against him and his sister. Mason's affidavit further states that the police and the prosecutor knew he was lying and that both the police and the prosecutor knowingly coached him in his false testimony.

ECF Dkt. #1.  On February 25, 2010, Respondent filed a Return of Writ.  ECF Dkt. #5.  On April November 1, 2010, Petitioner filed a traverse.  ECF Dkt. #19.

### III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

The AEDPA statute of limitations is not an issue in this case.  *See* ECF Dkt. ## 1, 5, 19.  Respondent contends, however, that some of Petitioner's claims are procedurally defaulted.  ECF Dkt. #5 at  18-20.

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).   In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

-14-

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)   whether the petitioner failed to comply with an applicable state procedural rule;

(2)   whether the state courts actually enforced the state procedural sanction;

(3)   whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)   if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138. Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## IV.   STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 26, 2007, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

-15-

(1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.     Decisions of lower federal courts may not be considered.

B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.     The state court decision may be overturned only if:

1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.     the state-court decision 'confronts a set of facts that are materially

-16-

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.  'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.  the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.  Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.  Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen*

-17-

*v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.   ANALYSIS

### A.   Procedural Default Analysis

In Ground Six of the petition, Petitioner contends that he was denied the effective assistance of trial and appellate counsel.  ECF Dkt. #1. Respondent contends that Ground Six of the instant petition is procedurally defaulted because Petitioner did not raise this claim on direct appeal in the Supreme Court of Ohio.  ECF Dkt. #5 at 19-20.  The undersigned will conduct the *Maupin* analysis.

Under the first prong of *Maupin*, it is clear that Petitioner failed to comply with a state procedural rule because he did not raise the issue of ineffective assistance of trial or appellate counsel at his first opportunity on direct appeal to the Supreme Court of Ohio.  "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment."  *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967); *but see State v. Cole*, 443 N.E.2d 169, n.1 (Ohio 1982) ("In *State v. Carter* . . . a court of common pleas ruled that, as counsel cannot realistically be expected to argue his own incompetence, res judicata does not act to bar a defendant represented by *the same counsel* at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for postconviction relief.") (emphasis added).  Here, Petitioner was represented by a different attorney on appeal to the Supreme Court of Ohio than he had in on appeal in the trial court or in the Eighth District Court of

Appeals.  ECF Dkt. #5, Ex. 2, 14, 16, 20.[1]  This conclusion is supported by the fact that Attorney

---

[1]    The undersigned notes that Attorney Mancino cited *State v. Hutton* 797 N.E.2d 948 for the proposition that: "The doctrine of res judicata does not apply to bar a claim of ineffective assistance of appellate counsel not previously raised in an appeal where the defendant was represented on that appeal by the same attorney who allegedly had provided the ineffective assistance, even where the defendant was also represented on that appeal by another attorney who had not represented the defendant at the time of the alleged ineffective assistance."  ECF Dkt. #5, Ex. 27.  However, *Hutton* is readily distinguishable because the additional attorney involved in the Defendant Hutton's appeal acted as the trial attorney's co-counsel on appeal.  *Hutton*, 797 N.E. 2d at 957.
    **(continued)**

Mancino, Petitioner's counsel on direct appeal to the Supreme Court of Ohio, is the same attorney who later filed Petitioner's Rule 26(B) application to reopen his appeal based upon assertions of ineffective assistance of trial and appellate counsel. *See* ECF Dkt. #5, Ex. 20, 21, 29. Therefore, it is clear that Petitioner had the opportunity to raise claims of ineffective assistance of trial and appellate counsel in his appeal to the Supreme Court of Ohio, but he did not. Accordingly, the undersigned recommends that the Court find the first prong of *Maupin* to be satisfied.

The second prong of *Maupin* is also satisfied because the appellate court held that Petitioner's claims of ineffective assistance of counsel were barred by res judicata. ECF Dkt. #5, Ex. 29 at 2-3. Petitioner contends that the second prong of *Maupin* is not satisfied because the appellate court went on to consider the merits of his claims. ECF Dkt. #19. Petitioner's argument is misplaced. The United States Supreme Court has held that:

> [A] state court need not fear reaching the merits of a federal claim in an *alternative* holding [to a procedural bar]. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935).Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, n. 10 (1989) (emphasis in original); *see also Coe v. Bell*, 161 F.3d 320, 329-30 (6th Cir. 1998) ("When a state-court judgment rested primarily on federal law or was interwoven with federal law, the bar applies only if the state court clearly and expressly stated that its judgment rested on a state procedural bar."). Here, the appellate court unequivocally invoked the procedural bar of res judicata and conducted a merits analysis in the alternative. ECF Dkt. #5, Ex. 29 at 2-3 ("Initially we find that the doctrine of res judicata prevents the reopening of Hines' appeal.

---

(**fn. 1, continued**)  The Supreme Court of Ohio reasoned that "one additional counsel on appeal does not permit the application of res judicata to claims of ineffective assistance of trial counsel, because it is unlikely that, as co-counsel with trial counsel, new counsel would be inclined to assert a claim on appeal for ineffective assistance of trial counsel." *Id*. Here, Attorney Mancino independently represented Petitioner on direct appeal in the Supreme Court of Ohio after Attorney Willis' representation concluded. Accordingly, the holding in *Hutton* does not apply here.

-20-

. . Since the issue of ineffective assistance of appellate counsel was raised or could have been raised on appeal to the Supreme Court of Ohio, res judicata now bars any further litigation of the claim. . . Notwithstanding the relevance of the doctrine of res judicata, a substantive review of Hines' brief in support of his application for reopening fails to establish the claim of ineffective assistance of appellate counsel."). Accordingly, the undersigned recommends that the Court find the second prong of *Maupin* to be satisfied.

The third prong of *Maupin* is satisfied because Ohio's doctrine of res judicata is an adequate and independent ground justifying procedural default. *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006). Therefore, Ground Six is procedurally defaulted unless Petitioner can demonstrate cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice will result from enforcing the default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Turning first to cause and prejudice, the undersigned notes that "a claim of ineffective assistance of appellate counsel may excuse a procedural default so long as this claim is not itself procedurally defaulted." *Landrum v. Mitchell*, ___ F.3d ___, 2010 4352213 (Nov. 4, 2010), *slip op.* at *26 ; *see also id*. at *8-*9. Here, Petitioner's claim of ineffective assistance of counsel is procedurally defaulted and it therefore may not form the basis for a showing of cause.

Lastly, Petitioner contends that he is actually innocent of the crimes charged. A narrow exception to the general procedural default rule exists when a habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). The Southern District of Ohio has aptly summarized the burden for establishing actual innocence:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. **To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."** *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623

(1998).   "**To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence**-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."   *Schlup*, 513 U.S. at 324.   The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"   *Id*. at 321.

*Medina v. Wolfe*, No. 2:06-CV-921, 2007 WL 2323381 at *9, slip op. (S.D. Ohio Aug. 9, 2007) (emphasis added).   This Court and other jurisdictions have held that evidence that was available at the time of trial cannot be considered in ruling upon a claim of actual innocence.   *See Rickard v. Wolfe*, No. 3:06-CV-2753, 2007 WL 4526522, *slip op.* at *6, *15 (N.D. Ohio Dec. 17, 2007); *Leggett v. U.S.*, Nos. 1:05CV732, 1:92CR233, 2006 WL 3091316, *slip op.* at *2 (N.D. Ohio Oct. 27, 2006); *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004); *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir.2005) ("Evidence is only new [for actual innocence purposes] if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.") (internal quotations omitted); *Cooper v. Brown*, 510 F.3d 870, 969-70 (9th Cir. 2007).

In this case, Petitioner relies upon an affidavit by Anthony Mason, where he recants his trial testimony.   ECF Dkt. #18 at 31.   Petitioner has not demonstrated the reliability of the proffered evidence. Mr. Mason's recantation must be viewed with "the utmost suspicion."   *State v. Germany*, Case No. 63568, 1993 WL 389577 at *6 (Ohio App. 8 Dist., Sept. 30, 1993), unreported; citing *United States v. Lewis*, 338 F.2d 137, 139 (6th Cir. 1964).   The United States Supreme Court has expressed disfavor for granting new trials based upon recanted testimony:

> Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction. For these reasons, a witness' recantation of trial testimony typically will justify a new trial only where the reviewing judge after analyzing the recantation is satisfied that it is true and that it will "render probable a different verdict."

*Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984).   Petitioner has offered no explanation for Mr. Mason's recent recantation.   Further, Mr. Mason's current motive is questionable because he has already received a reduced sentence in exchange for his testimony at trial, conditioned on his earlier

-22-

trial testimony being truthful.  *Hines*, 2004 WL 2340167 at ¶7.  Lastly, as Judge Ambrose found, there is no evidence to corroborate Mr. Mason's assertion that the police, the prosecutor, the trial court, and his attorney conspired to facilitate his alleged perjury.  ECF Dkt. #5, Ex. 44 at 15.

Since Petitioner has not presented new, reliable evidence of his innocence, the undersigned recommends that the Court enforce the procedural default with respect to Ground Six.

### B.    Merits Analysis

#### i.    Ground One

Respondent contends that Ground One is not cognizable because Petitioner argues that the trial court improperly denied his motion to suppress.  ECF Dkt. #5 at 21.  Respondent's reasoning is misplaced because Petitioner argues that the trial court denied him a "full and fair opportunity to litigate his Fourth Amendment claims."  ECF Dkt. #1 at 4.  The issue is not, as Respondent represents, whether the trial court improperly denied Petitioner's motion to suppress; the issue is whether the trial court provided him with a full and fair opportunity to litigate the suppression issue.

In *Stone v. Powell,* the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494.  The Supreme Court indicated that the purpose of a writ of habeas corpus is to ensure prisoners are not held on convictions when there has been a deprivation of a constitutional right resulting in an unreliable adjudication.  *Id*. at 479, 485 (the *Stone* Court cited various circuit courts employing this rationale, and the Court ultimately determined that judicial integrity does not require suppression of illegally obtained evidence).

The *Stone* Court conceded that judicial integrity has been advanced as a justification for the exclusionary rule, but the primary purpose of the exclusionary rule is to deter government actors from conducting unreasonable searches and seizures.  *Stone*, 428 U.S. at 484 citing *Mapp v. Ohio*, 376 U.S. 643, 658 (1961) ("The *Mapp* Majority justified the application of the rule to the States on several grounds, but relied principally upon the belief that exclusion would deter future unlawful

police conduct."); *Elkins v. U.S.*, 80 S.Ct. 206, 217 (1960).  Following *Mapp*, the Court endorsed the exclusionary rule as a deterrent tool.  *Id.* quoting *United States v. Calandra*, supra, 414 U.S. at 338, 348 (1974) ("the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . .").  The *Stone* Court concluded that the deterrent effect must be the primary reason for the exclusionary rule because, if judicial integrity were the justification: unconstitutionally seized evidence would have to be excluded even if the defendant assented to its introduction; standing would not be a requirement to challenge admissibility of evidence; illegally seized evidence could not be used in grand jury proceedings; and a defendant could not be impeached with illegally seized evidence.  *Id.* at 485-86.  The Court noted that none of these results are true.  *Id.* citing *Henry v. Mississippi*, 379 U.S. 443 (1965); *Alderman v. United States*, 394 U.S. 165 (1969); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Frisbie v. Collins*, 342 U.S. 519 (1952); *Calandra*, 414 U.S. at 338; *Walder v. United States*, 347 U.S. 62 (1954).  The *Stone* Court stated that "the physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant."  *Id.* at 490 quoting *Kaufman v. U.S.*, 394 U.S. 217, 237 (Black, J., dissenting)("A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty").  Therefore, allowing illegally obtained evidence does not compromise the integrity of the judicial process in most cases.  *Id.* at 491.

The *Stone* Court determined that, since the exclusionary rule was not a function of judicial integrity and writs of habeas corpus are, then the determinative question is whether applying the exclusionary rule in habeas corpus proceedings will further deter illegal searches and seizures. *Stone*, 428 U.S. at 493.  The Court concluded that reviewing potential Fourth Amendment violations in habeas corpus proceedings will have no substantial deterrent effect because law enforcement authorities generally will not "fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal."  *Id.*  Moreover, any incremental benefit in

deterring illegal police behavior that is gained by reviewing searches and seizures in habeas corpus proceedings is outweighed by the burden it will place on the criminal justice system. *Id*. Consequently, Fourth Amendment claims are not cognizable in habeas corpus proceedings unless the petitioner has been denied a full and fair opportunity to litigate his claim. *Id*. at 469, 482, 494-95.

The Sixth Circuit Court of Appeals uses a two-step inquiry in order to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court: "First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted); *Riley v. Gray*, 674 F.2d 522, 527 (6th Cir. 1982).

The Sixth Circuit has held that "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is, in the abstract, clearly adequate." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The *Riley* court outlined the mechanism:

> Ohio R.Crim.P. 12 provides an adequate opportunity to raise fourth amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R.App.P. 3(A) and Ohio R.App.P. 5(A).

*Riley*, 674 F.2d at 526. Petitioner has not demonstrated that a failure of that mechanism has occurred in this case. Petitioner contends that the procedural mechanism has failed because he was claimed to be a "user" of the home that was searched, and therefore had standing to challenge the search. ECF Dkt. #19 at 24. He further contends that because the police and prosecution claimed that he possessed the drugs that were seized, he had standing to move for suppression. *Id.*

These arguments do not address a failure of the procedural mechanism; they address the underlying merits of the claim. The *Riley* case is helpful in demonstrating what constitutes a failure of a procedural mechanism. In *Riley,* the court held that a petitioner did not have a full and fair opportunity to present his claim because the appellate court did not apply *Jones v. United States*, 362

-25-

U.S. 257 (1960) *abrogated by United States v. Salvucci*, 448 U.S. 83 (1980). *Riley*, 674 F.2d at 527. The *Riley* court explained that *Jones* held that a person, charged with an offense involving possession of contraband as one of its elements, need not show that he had standing to challenge the search. *Id*. The *Riley* court held:

> We do not believe that the appellate court's failure to apply *Jones* denied the petitioner an opportunity for full and fair litigation, because its action may have been warranted in light of intervening decisions. *United States v. Hunter*, 550 F.2d 1066, 1072 (6th Cir. 1977). We believe, however, that the state appellate court frustrated the petitioner's opportunity to litigate his fourth amendment claims because it failed to remand the case to the trial court to allow the petitioner to establish his standing to challenge the search.

*Riley*, 674 F.2d at 527. Unlike *Riley,* Petitioner had a full and fair opportunity to establish standing. He had notice of the pertinent law and the state court considered the evidence in support of his claim. In the end, he simply failed to establish a legitimate expectation of privacy. Thus, there was no procedural failure.

For the foregoing reasons, the undersigned recommends that the Court find that the state courts have provided Petitioner with a full and fair opportunity to litigate his Fourth Amendment claims, which forecloses federal review of Ground One. Therefore, Ground One should be dismissed in its entirety with prejudice.

### ii.       Ground Two

In Ground Two, Petitioner asserts various subclaims: (1) the State specified to facts in an unsworn method under the guise of questioning its chief witness; (2) the trial court refused to declare a mistrial where improper questions are asked of a police officer by counsel for a co-defendant; (3) during closing arguments, the State vouched for the credibility of its chief witness in a manner that in effect stated that Petitioner was guilty; and (4) there was insufficient evidence to sustain a conviction and proof against Petitioner is based on perjured testimony. ECF Dkt. #1.

The state appellate court addressed all of these claims, and Petitioner must demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The undersigned

-26-

will address each sub-claim separately and then collectively.

### a.     Vouching/Leading questions

First, Petitioner contends that the prosecuting attorney improperly attempted to rehabilitate a witness and, in effect, testified.  ECF Dkt. #1, #19 at 36.  In support of his claim, Petitioner cites *U.S. v. Francis*, 170 F.3d 546, (6th Cir. 1999), where the Sixth Circuit held that a court reviewing a claim of prosecutorial misconduct must (1) determine first whether the statements were improper and (2) then look to see if they were flagrant and warrant reversal.  *Id*. at 549.  The court went on to hold that flagrancy is "a pretty high standard," and "[t]o determine flagrancy, the standard set by [the Sixth Circuit] is: (1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused."  *Id*. at 549-50, 52.  If a court determines that statements are not flagrant, then it should determine whether the statements were harmless under three factors articulated in *United States v. Bess*, 593 F.2d 749, 753-57 (6th Cir.1979).  *U.S. v. Carroll,* 26 F.3d 1380, 1384-86, 1387, n. 6 (6th Cir. 1994) ("we also believe that *Bess* ought to be used in all subsequent cases involving non-flagrant improper prosecutorial remarks.").  These factors are: (1) whether proof of guilt is overwhelming; (2) whether defense counsel objects; and (3) whether the trial judge steps in and admonishes the jury.  *Id*.  A defendant is not entitled to a new trial if any one of these factors is satisfied.  *Id*. at n.6.

In addition to *Francis*, the undersigned notes that, on habeas review, a district court must not consider whether the state court's decision regarding prosecutorial misconduct was wrong, but whether it was an unreasonable application of clearly established federal law.  *Macias v. Makowski*, 291 F.3d 447, 454 (6th Cir. 2002) citing 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 411.  Accordingly, if a prosecutor's statements are isolated and the evidence against a petitioner is strong, the determination by a state court that a petitioner's due process rights have not been violated is not objectively unreasonable and the writ should be denied.  *Id*.

-27-

Here, Petitioner contends that the prosecutor improperly asked leading questions of Anthony Mason and improperly vouched for his credibility.  ECF Dkt. #18 at 36- 39.  The appellate court analyzed the testimony and determined as follows:

> Defendant first takes exception with the State's questions on re-direct of Mason about his understanding of his plea agreement. Mason admitted on cross-examination that his lawyer told him "no deal unless [he] implicated [the co-defendants]." On re-direct, the prosecutor questioned Mason about the inference created by defendant on cross-examination that Mason's deal depended upon him implicating all of his co-defendants regardless of the truth. Mason admitted that the State could still charge him relative to the perjury he had committed and that the State only told him to tell the truth. There is no prejudicial error where the State replies to statements made in the course of an argument by defense counsel, which are of such a nature as to require answer. *State v. Lott* (1990), 51 Ohio st. 3d 160, 166; *State v. Watson* (1969), 20 Ohio App.2d 115, 125. We do not find that the prosecutor engaged in any misconduct or improper vouching in that portion of Mason's re-direct examination.

ECF Dkt. #5, Ex. 19 at 11.  This analysis is not contrary to or involving an unreasonable application of clearly established Federal law.  The Sixth Circuit has considered the implications of leading questions on direct examination and held that:

> . . . leading questions are not per se prohibited on direct examination, the record demonstrates that such questions may have been appropriate in this case, and defendant does not show prejudice. We have stated that "[i]t is well recognized that the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court." *United States v. Shoupe*, 548 F.2d 636, 641 (6th Cir.1977) (citing 3 Wigmore, Evidence § 770 at 157 (1970)); see also Fed.R.Evid. 611(c) ("Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony") (emphasis added).

*U.S. v. Birdsong*, 330 Fed.Appx. 573, 2009 WL 1546380, **8 (6th Cir. June 3, 2009), unreported. In *Birdsong*, the court noted that the defendant did not complain about the substance of the questions or contend that the information contained within them was inaccurate; rather, his argument went merely to the form of the questions. *Id.* at **9.  While Petitioner elsewhere challenges the substance of Mr. Mason's testimony, the undersigned has previously determined that the evidence supporting that allegation (*i.e.*, Mr. Mason's affidavit) is not reliable.  Therefore, Petitioner's argument rests on the form of the prosecutor's questioning.  The *Birdsong* court explained:

-28-

> [A]n objection to a question as "leading" is only an objection to the "form" of the question. If an objection is offered and sustained, the examiner simply rephrases the question and draws the desired information from the witness. Any reasonably good lawyer worth his salt can accomplish this little trick. Without a sustained objection, an examiner would never have a chance to rephrase his question. For this reason, we think error, plain or otherwise, could never be identified in a case where only the form of a question to which no objection is made is challenged on appeal.

*Id*. at **9. Thus, the undersigned recommends that the Court find Petitioner's claim related to the prosecutor's leading questions to be meritless.

With respect to vouching, the Sixth Circuit has held:

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness. Improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury[.]

*United States v. Trujillo*, 376 F.3d 593, 607-08 (6th Cir.2004) (quoting *United States v. Martinez*, 253 F.3d 251, 253-54 (6th Cir.2001)).  The evidence Petitioner has presented does not establish that the prosecutor has improperly vouched for a witness.  In *Francis*, the prosecutor questioned a witness about a plea agreement and the jury heard how the prosecutor and the witness met once, but the meeting ended abruptly because the prosecutor said the witness was not telling the truth.  *Francis*, 170 F.3d at 551. The jury then heard that the prosecutor and the witness met and the prosecutor finally believed the witness and offered him a plea agreement.  *Id.*  The Sixth Circuit concluded:

> [The witness'] testimony made it clear to the jury that the plea agreement materialized only after the prosecutor believed him. Because this indicated a belief in the witness's credibility, it was improper as well. It follows that this set of remarks constitutes improper vouching.

*Id.*

Here, Petitioner contends that Mr. Mason testified on cross examination that his lawyer informed him that there was "no deal unless [he] implicate[d] other people."  ECF Dkt. #19 at 36. He further contends that on redirect examination, the prosecutor improperly vouched for Mr. Mason. *Id.* at 36-39.  Petitioner concludes that it was improper for the prosecutor to testify to her

-29-

understanding of the plea agreement, not Mr. Mason's.  ECF Dkt. #19 at 40.  Petitioner further contends that the prosecutor's redirect examination implied that the prosecutor would not have allowed Mr. Mason to testify if she did not believe he was testifying truthfully.  *Id.*

The instant case is distinguishable from *Francis* for three reasons.  First and foremost, *Francis* involved a direct appeal and the instant case involves a habeas petition with a different standard of review.  *See Francis*, 170 F.3d at 548; 28 U.S.C. § 2254(d).  "Claims of prosecutorial misconduct are reviewed deferentially on habeas review. " *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  "To be cognizable, the misconduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. Even if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair."  *Id.*  Therefore, if an error occurred in the state trial court, comparable to the error in *Francis*, it would not necessarily require reversal in the procedural posture of this case.  Another district court has recently observed:

> It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins*, 209 F.3d at 537 and n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir.2002).

*Lee v. Booker*, No. 2:08-CV-11170, 2010 WL 5068025 at *6. (E.D.Mich. Dec. 7, 2010), slip op. Here, the state appellate court considered the redirect examination and determined that the prosecutor's questioning was not improper.  The undersigned sees no basis for determining that the appellate court's decision was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.  Accordingly, Petitioner has not demonstrated that federal habeas relief is appropriate.

Second, to the extent Petitioner relies on *Francis* to establish the impropriety of the prosecutor's statements, the case is factually distinguishable.  At the outset of Mr. Mason's testimony, prior to cross examination, the prosecutor clearly established that his plea agreement was premised on Mr. Mason's truthful testimony, not on anybody's conviction, and that the judge was

-30-

to determine Mr. Mason's truthfulness for the purposes of determining compliance with the plea agreement:

> Q. Other than in this courtroom, is what I'm talking about. I'm talking about other than in this courtroom, have we met before?
>
> A. Yes.
>
> Q. How many times?
>
> A. Once.
>
> Q. Okay. Was that last week?
>
> A. Yeah.
>
> Q. All right. Now, you said you also have another name you mentioned, Anthony Mason.
>
> A. Yeah.
>
> Q. When we met last week, did eventually you end up pleading guilty in this case?
>
> A. Yes, Miss.
>
> Q. Okay. And tell the ladies and gentlemen of the jury what you pled guilty to.
>
> A. Six years.
>
> Q. Okay.  An agreed to sentence of six years, correct?
>
> A.  Yeah.
>
> Q. And did you do that in this courtroom?
>
> A. Yeah.
>
> Q. All right. Now, that count that you had been facing, that you pled to and agreed to six years, what -- how much time would you have gotten if you would have been

found guilty of that original count?

A. 10 years.

Q. Okay. And was there another count in the indictment that carried that same 10-year sentence?

A. I don't know about that, Miss. I know about 10 years.

THE COURT: You have to speak a little louder.

A. I know about 10, mandatory 10, that's what I know about.

Q. Okay. Were there two other counts then in the indictment that were dismissed?

A. Yeah, I think so.

Q. Okay. Other than this case, had you ever been arrested for a felony before?

A. No.

Q. All right. How old are you?

A. 19.

Q. Now, prior to you pleading, were you told about certain ground rules?

A. Yes.

MR. WILLIS: Objection.

THE COURT: Overruled.

Q. Were you -- were certain ground rules -- were rules laid out to you with your attorney present?

A. Yeah.

Q. As a matter of fact, your attorney was always present, correct?

A. Yes.

Q. Now, this was actually your third attorney in this case?

A. Yes, Miss.

Q. Part of this plea agreement was -- was part of this plea agreement that you had to tell the truth?

A. Yeah.

Q. Because you had lied a lot before, correct?

A. Yes.

Q. And we discussed that, didn't we?

A. Yes.

**Q. All right. And part of the plea agreement, that you are to tell the truth, and that agreed to six years relies on you telling truth, that - whether or not you tell the truth is going to be determined by who?**

**A. The Judge.**

**Q. The Judge who's in this courtroom, and watching everything that's going on, correct?**

**A. Yeah.**

Q. When we were in the courtroom last week on more than one occasion, was it always this courtroom?

A. Yeah.

**Q. And part of that agreement, regardless of what happens in this case that we're here on now doesn't matter in the determination of whether you're telling the truth, correct?**

-33-

**A. Yeah.**

Q. We discussed this, didn't we, last week?

A. Last week.

**Q. Absolutely. And that even if these people are found not guilty, if you tell the truth, the deal still stands?**

**A. Yeah.**

Tr. at 1206-09 (emphasis added).  Unlike *Francis*, the prosecutor in this case made it clear at the outset that the trial judge would be assessing Mr. Mason's veracity for the purposes of determining his compliance with the plea agreement.

Third, even assuming the prosecutor's remarks were inappropriate, Petitioner has not demonstrated flagrancy.  Defense counsel asked on cross examination whether Petitioner's lawyer informed him that there was "no deal unless [he] implicate[d] other people."  Tr. at 1353-54.  Only then did the prosecutor explore the specific facts regarding how the plea agreement was negotiated and inform the jury that the prosecuting attorney's office did not believe Mr. Mason's contention that everybody else had no involvement.  Tr. at 1408.  Even if the prosecuting attorney's redirect examination questions were improper in this case, they were not flagrant because they did not pose a risk of misleading the jury.  They were directed at clarifying Mr. Mason's cross examination testimony regarding the contents of the plea agreement.  Further, the questions constituted an isolated portion of a lengthy examination.  And the likelihood of prejudice was low because the trial court specifically instructed the jury that:

> . . . The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self interest.  But the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion and require that it be weighed with great caution.
>
> It is for you, as jurors, in light of all the facts presented to you from the witness stand, to evaluate such testimony, and to determine its quality and worth, or its lack of quality and worth.

-34-

> . . . There has been evidence that the witness Salmon, AKA Mason, who testified at this trial, lied under oath at another proceeding.  I must warn you that the testimony of this witness should be viewed cautiously, and weighed with great care.  It is, however, for you [*referring to the jury*] to decide how much of his testimony, if any, you wish to believe.

Tr. at  1731, 1732-33.  The judge clearly informed the jury of its province to assess credibility and of its power to entirely discount Mr. Mason's testimony.  *See Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1356 (6th Cir. 1993) ("The giving of this [curative] instruction factors into our determination that the isolated statement made by the prosecutor did not cause petitioner's trial to be fundamentally unfair."); *see also Carroll*, 26 F.3d at 1385 (some of the *Bess* factors overlap with the flagrancy factors cited above).  Even following these instructions, the jury found Petitioner guilty.  It is unlikely that the prosecutor's single statement had any significant impact, especially when paired with the trial judge's instruction highlighting Mr. Mason's perjurious activities.  Thus, the likelihood of prejudice is low, and Petitioner has not met the "high standard" of demonstrating flagrancy.

Since Petitioner has not demonstrated flagrancy, the Court must consider the factors articulated in *Bess*.  The Court should find harmlessness under *Bess* because the trial court gave a curative instruction to the jury.  Thus, the third prong of *Bess* is clearly not satisfied and Petitioner is not entitled to a new trial.  *See Carroll*, 26 F.3d at n.6.

In conclusion, the undersigned recommends that the Court find that Petitioner has failed to demonstrate that the state courts unreasonably applied clearly established federal law and that he is entitled to habeas relief on this subclaim.  *Macias*, 291 F.3d at 454.

### b.  Questioning of Police Officer by Co-Defendants' Counsel

Next, Petitioner contends that the trial court failed to grant a mistrial where counsel for co-defendants asked questions of a police officer that elicited his opinion of Mr. Mason's veracity.  ECF Dkt. #19 at 41.  Petitioner contends that his co-defendant chose a bench trial, but the two were tried jointly in the presence of the jury.  *Id*.  Therefore, Petitioner concludes, the jury was exposed to evidence that was not admissible with respect to Petitioner.  *Id*.  Petitioner specifically challenges

-35-

questions that asked Detective Mendalero to comment on the credibility of another witness.  *Id*. at 42.

Petitioner has not directed the Court to the questions and testimony that purportedly violated his constitutional rights.  He also failed to do so in the state appellate court and the court noted:

> Defendant essentially alleges that counsel for the co-defendants (Grant and Richard) conspired with the State and police in a "cleverly conceived effort" to impermissibly vouch for the credibility of Mason. Defendant contends that the trial court should have granted his motion for mistrial and for severance on this basis.
>
> Defendant makes a sole and passing reference to the cross-examination of Det. Mendalero. Otherwise, defendant fails to cite or quote any portion of the record in support of this argument. Further, defendant has not provided any law to support his position. We find no evidence of the alleged conspiracy. We have reviewed the cross-examination of Mendalero and do not find any error in the trial court's decision to deny defendant's motion for mistrial or for severance based thereon.

ECF Dkt. #5, Ex. 19 at ¶¶62-63.  In fact, Petitioner's trial counsel, Attorney Willis, asked Detective Mendalero an extensive line of questions involving what the detective was able to corroborate regarding Mr. Mason's testimony. Tr. at 1573-1579.[2]  Throughout that line of questioning, Attorney Willis emphasized that Detective Mendalero was not able to corroborate the entirety of Mr. Mason's testimony.  Tr. at 1576-78.  Since Attorney Willis raised the issue, the undersigned fails to see any basis for the instant claim.

Iran Richards' attorney then cross-examined Detective Mendalero.  During that examination, Detective Mendalero testified that he would not suborn perjury, and he would not put someone on a witness stand if he did not think he was telling the truth. Tr. at 1600-01.  Detective Mendalero then testified that he was present when Mr. Mason testified that Defendant Richards "had nothing to do with the dope." *Id*.  Attorney Willis raised no objection during this line of questioning. *Id*. at 1595-160.  Likewise, he did not object while Attorney Marek cross examined Detective Mendalero. *Id*. at 1602-1621.

---

[2]  Respondent filed Vol. VIII of the Transcript as an attachment to ECF Dkt. #16.  The version attached to the return of writ is incomplete.

To the extent an impropriety may have occurred during cross examination, the error was harmless pursuant to *Bess,* as noted above.[3]  Accordingly, the undersigned recommends that the Court find that the state court did not unreasonably apply clearly established federal law and that Petitioner is not entitled to habeas relief on this subclaim.

<b>c.    Prosecutor's Closing Argument</b>

Petitioner contends that the prosecutor improperly vouched for Mr. Mason during her closing argument.  ECF Dkt. #19 at 43.  Petitioner contends that the prosecutor did not refer simply to Mr. Mason's trial testimony, but she also indicated that Mr. Mason had to proffer truthfully in order to receive the bargained-for-benefit of his plea agreement.  *Id.*  Petitioner contends that "the prosecutor was the sole person to determine whether he *proffered* truthfully."  *Id.* (emphasis in original).  However, as noted above, the prosecutor asked Mr. Mason who would determine his veracity, and Mr. Mason responded that the judge would.  The prosecutor reiterated this point in closing.  Tr. at 1829.

The same analysis set forth in Section V(B)(ii)(a), above, is applicable here.  Additionally, the appellate court held as follows:

> While the prosecutor's comments about Mason's plea agreement were inartful, they were technically accurate. It is true that the judge would ultimately decide whether Mason had fulfilled his side of the plea agreement with regard to his own case. This, however, had no impact on the jury's ability to find that Mason was or was not telling the truth for purposes of defendant's trial. The prosecutor's statements about the judge's ability to determine Mason's credibility were somewhat confusing and better left unsaid, but they do not merit reversal in this case. A jury is presumed to follow the instructions given to it by the trial judge. *State v. Stallings* (2000), 89 Ohio St.3d 280, 286, 731 N.E.2d 159. We find that the trial court properly instructed the jury and made clear that the jury would decide what weight, if any, to give to Mason's testimony. Rather than endorse the alleged credibility of Mason, the trial court specifically cautioned the jury to weigh his testimony with grave suspicion and great care. The prosecutor also told the jury to rely on the instructions given to them by the trial court.

ECF Dkt. #5, Ex. 19 at ¶58.  Therefore, the undersigned recommends that the Court find that the state

---

[3]    The undersigned acknowledges that *Bess* primarily deals with prosecutorial vouching, but the case can apply analogously where a co-defendant attempts to vouch for a witness.

court did not unreasonably apply clearly established federal law and that Petitioner is not entitled to habeas relief on this subclaim.

### d.    Sufficiency of the Evidence

Next, Petitioner contends that his conviction was not supported by sufficient evidence. Petitioner reasons that his conviction rests on Mr. Mason's incredible testimony that was later recanted.  ECF Dkt. #19 at 44.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970). "In assessing the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *Id*.  (internal citation omitted).  In order to establish an insufficiency of the evidence claim, "the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) *quoting Jackson,* 443 U.S. at 319. "This requires successful challengers to meet a very high threshold, even with respect to newly-discovered evidence." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).  The inquiry is not whether the jury made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.  *Scott,* 209 F.3d at 885 *quoting Jackson,* 443 U.S. at 319.

The appellate court reviewed Petitioner's claim and determined that the proper standard of review required  that the evidence be viewed in the light most favorable to the prosecution.  The court ultimately concluded that the prosecution introduced enough evidence that would permit the jury to find Petitioner guilty:

Under this assignment of error, defendant argues that his convictions were not supported by sufficient evidence because he claims Mason's testimony was not credible. The relevant standard, however, compels us to view the evidence in a light most favorable to the prosecution. Defendant was charged with drug trafficking, possession of drugs, and possession of criminal tools.

Mason testified that defendant stored large amounts of marijuana at 5541 Grasmere and that he assisted defendant in "breaking down" the marijuana in preparation for its sale. The testimony established that police first observed defendant during their surveillance of a suspected drug dealer at a hotel. There was evidence presented that defendant transported people and packages between the hotel and 5541 Grasmere and that an occupant of defendant's vehicle put out trash that contained marijuana residue and drug packaging materials. Records linked to cellular phones used by defendant were produced showing calls to Mason and the other co-defendants. Mason indicated that defendant would call him and ask him to check on the marijuana and that defendant paid him with marijuana.

As set forth previously herein, the jury was clearly instructed that they were to decide the credibility of the witnesses and were cautioned to weigh Mason's testimony with grave caution and great care. *Ibid*. The jurors were free to disregard Mason's testimony in toto. The record contains other evidence of defendant's involvement in the crimes charged beyond Mason's testimony, i.e., the police surveillance of defendant and his vehicle to and from the hotel and 5541 Grasmere, cell phone records, and his presence during the execution of the search warrant on the premises. Defendant's assertion that the State did not produce sufficient evidence to support his convictions is without merit.

ECF Dkt. #5, Ex. 19 at ¶¶75-77.  In addition to the foregoing, the undersigned has already addressed the weaknesses associated with Mr. Mason's recantation.  *See supra* § V(A).  Consequently, the undersigned sees no basis for concluding that the state court unreasonably applied clearly established federal law.

### e.      Collective Consideration of Prosecutorial Misconduct Claims

Petitioner also argues that all of the alleged instances of prosecutorial misconduct collectively violated his rights to a fundamentally fair trial and due process.  Courts should consider flagrancy and harmlessness based on the cumulative nature of purported errors.  *See Francis*, 170 F.3d at 552.

The undersigned recommends that the Court find no flagrancy and that any purported error was harmless.  Errors by the prosecutor were minor, isolated, aimed at clarifying Mr. Mason's plea agreement.  Ultimately, the judge issued explicit instructions, and he even directly addressed Mr.

Mason's veracity and the jury's right to completely discount his testimony.  In sum, Petitioner has not shown that any impropriety was so flagrant that only a retrial could correct the error, and the judge's instruction rendered any error harmless.  *See Francis*, 170 F.3d at 552.  Accordingly, the undersigned recommends that the Court dismiss Ground Two in its entirety with prejudice.

### iii.    Ground Three

In Ground Three, Petitioner contends that he was denied the right to a speedy trial in violation of the Sixth Amendment to the United States Constitution.  ECF Dkt. #1.  Respondent contends that Petitioner argued to the state court that a delay of his trial violated O.R.C. § 2945.71, and he did not invoke the federal due process clause.  ECF Dkt. #5 at 24.  On review of his appellate brief, the undersigned agrees with Respondent that Petitioner did not invoke the Federal Constitution.  *See* ECF Dkt. #5, Ex. 16 at 6-8.

In this particular case, the appellate court determined that the trial court complied with O.R.C. § 2945.71 and that the 90 day period for bringing Petitioner to trial was extended due to his filing of a motion to suppress.  ECF Dkt. #5, Ex. 19 at ¶¶15-19.  The Sixth Circuit has explicitly addressed this situation and held that federal habeas relief is not available:

> We note first that the Ohio courts have determined that petitioner's rights under the Ohio speedy trial statute have not been violated. It is axiomatic that state courts are the final authority on state law. The Ohio courts concluded that the delay in this case was the result of a necessary and reasonable continuance granted on the trial court's own motion, a ground that is construed to toll the period of pretrial delay under Ohio Rev.Code Ann. § 2945.72(H). Although petitioner argues, in effect, that this interpretation is erroneous, a federal court may not set aside the state court's interpretation of state statutes. State statutes mean what state courts say they mean. *See Railroad Commissioners v. Pullman*, 312 U.S. 496, 499-500, 61 S.Ct. 643, 644-645, 85 L.Ed. 971 (1941) ("The last word on the meaning of [a Texas statute] belongs neither to us nor to the district court but to the Supreme Court of Texas."). Even if it could be said that the state court's interpretation is wrong, it has long been recognized that "a mere error of state law" is not a denial of due process. *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948), quoted in *Engle v. Isaac*, 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 1568 n. 21, 71 L.Ed.2d 783 (1982).

*Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984); *see also Matthews v. Lockhart*, 726 F.2d 394 (8th Cir. 1984) ("The question of whether the state violated its own speedy trial statute is a matter for the state courts. ").  Since Petitioner has not demonstrated a violation of the Ohio speedy

-40-

trial statute, he is not entitled to habeas relief based upon that claim.

To the extent Petitioner states a Fourteenth Amendment Claim, the undersigned notes that the United States Supreme Court has articulated four factors that courts must consider in determining whether a defendant's right to a speedy trial has been violated: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. at 531.

The appellate court determined in this case that 99 days elapsed between Petitioner's arrest and the commencement of his trial. ECF Dkt. #5, Ex. 19 at ¶19. Petitioner acknowledges that the delay in this case was, at most, nine days. ECF Dkt. #19 at 35; *but see* ECF Dkt. #5 at 26 (Respondent contends the 90 period was extended by Petitioner's suppression motion); ECF Dkt. #5, Ex. 19 at ¶¶15-19 (appellate court's determination that 90 day period was extended by suppression motion). Even giving Petitioner the benefit of the doubt, assuming that the appellate court erred, and assuming he did in fact experience a 9 day delay, Petitioner has not demonstrated prejudice. The Sixth Circuit has held that a eight-month-and-three-week delay was not "unreasonable enough to trigger the *Barker* inquiry." *U.S. v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002); *U.S. v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) ("A delay of five months is not per se excessive under the Sixth Amendment. "); *but see Barker*, 407 U.S. at 530-31 ("Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."). Thus, the purported nine-day delay is not presumptively prejudicial. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Thus, the Court's inquiry can end here.

Nevertheless, under the second *Barker* prong, the undersigned notes that the reason for the delay, as the appellate court noted, was attributable to the trial court's consideration of Petitioner's suppression motion. Under the third *Barker* prong, it appears that Petitioner did assert a right to a

-41-

speedy trial.  Lastly, Petitioner has not made an affirmative showing that the nine-day delay in this case  weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence.  *Doggett v. U.S.*, 505 U.S. 647, 655 (1992).  He has not demonstrated that oppressive pretrial incarceration occurred or that he experienced abnormal anxiety and concern as a result of the delay.

The undersigned recommends that, if the Court finds it necessary to consider all the *Barker* factors, it find that Petitioner has failed to demonstrated a speedy trial violation that merits habeas relief.  This claim should be dismissed with prejudice in its entirety accordingly.

### iv.    Grounds Four and Five

Petitioner acknowledges that he inadvertently included the same claim twice and labeled it as Ground Four and Ground Five.  ECF Dkt. #19 at 45.  In these Grounds, Petitioner contends that  he was denied the right to confront an adverse witness because the trial court curtailed cross examination.  *Id*.

Respondent contends that "Hines's claim does not state a claim under the confrontation clause of the Sixth amendment because that clause governs when a witness fails to testify at all at trial."  ECF Dkt. #5 at 38.  Respondent cites no caselaw for this proposition.  Respondent goes on to characterize any purported state court error as a matter of evidentiary law.  *Id*.  Respondent concludes that "[s]ince there was not [sic] actual violation of state law, Hines cannot show that there was an egregious violation.  His claims in Grounds Four and Five must therefore be denied."  ECF Dkt. #19 at 39.

The undersigned fails to see a basis for Respondent's characterization of the law.  A cursory search of Sixth Amendment caselaw leads to the United States Supreme Court's decision in *Davis v. Alaska*, which plainly contradicts Respondent's interpretation of the Confrontation Clause:

> Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). Professor Wigmore stated:

'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' (Emphasis in original.) 5 J. Wigmore, Evidence s 1395, p. 123 (3d ed. 1940).

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.

*Davis*, 415 U.S. at 315-16 (1974).  Given the holding in *Davis*, the undersigned disagrees with Respondent's characterization of these claims as state law evidentiary issues, and finds that Petitioner's claim should be analyzed pursuant to *Davis*.

The Sixth Circuit has outlined some of the boundaries of cross examination in light of *Davis*:

"[i]t does not follow ... that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Id*. at 679, 106 S.Ct. 1431. For example, the judge may impose "reasonable limits" to avoid "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [*Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).] The Confrontation Clause " 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Id*. (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam)). Applying these principles, *Van Arsdall* acknowledged a Confrontation Clause violation because the trial court had "prohibited all inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge." *Id*. The Court then restated its rationale: "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias...." *Id*. at 680, 106 S.Ct. 1431 (citing *Davis*, 415 U.S. at 318, 94 S.Ct. 1105).

These cases demonstrate that the Confrontation Clause affords the right to impeach a witness with his criminal record, subject to the trial court's discretion to impose reasonable limitations to prevent harassment and annoyance of the witness. *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431. Impeachment with prior crimes is precisely the "otherwise appropriate" cross-examination permitted under *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. 1431. It is a prototypical form of cross-examination, even if it goes only to the witness's credibility. *See Davis*, 415 U.S. at 316, 94 S.Ct. 1105; see also, e.g., *Ohler v. United States*, 529 U.S. 753, 757, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000) ("[O]nce the defendant testifies, she is subject to cross-examination, including impeachment by prior convictions...."); *Grunewald v. United States*, 353 U.S. 391, 420, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) ("[W]hen a criminal defendant takes the stand, he ... becomes subject to cross-examination impeaching his credibility just like any other witness....").

-43-

*Vasquez v. Jones*, 496 F.3d 564, 570 (6th Cir. 2007).  In sum, "[d]efense counsel must be afforded an ample opportunity to test the credibility and veracity of adverse witnesses." *U.S. v. Faymore*, 736 F.2d 328, 334 (6th Cir. 1984).  Nevertheless, the Confrontation Clause "does not guarantee the defense the right to conduct a completely unfettered examination." *DeMastry v. Warden,* No. 2:05-cv-267, 2007 WL 869695 at *31 (S.D. Ohio Mar. 20, 2007); *Van Arsdall*, 475 U.S. 673; *Fensterer*, 474 U.S. at 20.  The Sixth Circuit has held that federal trial courts must be afforded wide discretion to restrict the scope of cross-examination.  *Faymore*, 736 F.2d at 334.  Examples of appropriate areas in which a trial court may restrict questioning include repetitive and unintelligible questions. *Id*.

Of note, the Sixth Circuit has also held that where the court's restriction prevented defense counsel from cross-examining the government's chief witness as to his credibility and the veracity of his testimony **on a required element of the charged offense**, the defendant has been denied his Sixth Amendment right of confrontation. *U.S. v. Callahan*, 551 F.2d 733, 737 (6th Cir. 1977) (emphasis added).  In *Callahan*, however, the Sixth Circuit explicitly noted that questions at issue did not involve the witness' "general credibility, " but the concerned one of the required elements of the crime charged.  *Id*.

In this case, the trial judge explained that he restricted defense counsel's inquiry into the alleged "New York incident" with Anthony Mason because defense counsel showed no basis for his questions:

> However, arguments 3 and 4 allege that the court unduly restricted defense cross-examination of witness Anthony Mason, and forbade the defense from inquiring into the New York City incident. I beg to disagree about the restriction. I think that the court allowed a wide range of questions to Mr. Mason. And he was clearly proven to be a perjurer, admitted to being a perjurer. We did have a discussion at side bar regarding this New York City incident and Mr. Will had problems with any further evidence before he would proceed to continue his questioning in regarding the alleged rape incident by Anthony Mason, that was never produced. And so even though that we started down that road, the jury heard something in that regard, it never heard the end of it. So it could go both ways. I mean, the jury was left with the notion that there was something there, but it was never finished. That is the questioning in that regard. So I don't believe that holds any water.

-44-

> I don't think the defendant had a right to pursue it any further, especially since no further information or evidence of the New York rape was presented to the court.

Tr. at 1844-45.  The trial judge had more discretion here than in *Callahan* because the testimony sought focused on Mr. Mason's "general credibility" and had no direct relation to the crimes charged in this case.

Further, the judge in this case acted within his discretion when he restricted cross examination because defense counsel failed to establish a good faith basis for the intended line of questioning. "The trial court may, in its discretion, preclude questions for which the questioner cannot show a good faith basis." *United States v. Concepcion*, 983 F.2d 369, 391 (2d Cir.1992); *see also U.S. v. Carrillo*, 166 F.3d 1202 (table), 1998 WL 778311, *2 (2d Cir. Oct. 30, 1998); *U.S. v. Katsougrakis*, 715 F.2d 769 ,779 (7th Cir. 1983) ("Although counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts."); *U.S. v. Beck*, 625 F.3d 410, 418 (7th Cir. 2010) ("No attorney may ask a question if he doesn't have a good-faith basis to ask it; that is, attorneys cannot take a shot-in-the-dark approach to their questions. But an attorney does not need definitive proof to have a good-faith basis, just a well reasoned suspicion that a circumstance is true.") (citations and quotations omitted); .

In *Concepcion*, the Second Circuit held that it was appropriate to restrict cross examination involving a witness' alleged involvement in a murder.  *Id*.  The court reasoned that there was no showing that a murder had actually occurred or that the witness participated in its commission.  *Id*.  The *Concepcion* court ultimately held that the refusal to permit cross examination fell within the court's discretion.  This case presents facts similar to *Concepcion*.  Defense counsel attempted to ask a witness about a crime he allegedly committed.  He made no showing to the trial court on the record to demonstrate a basis for asking the question.  The undersigned recommends that the Court find no Sixth or Fourteenth Amendment violations where defense counsel failed to establish any basis for

attempting to impeach a witness on a collateral issue.  *Cf. Faymore*, 736 F.2d at 334;  *Concepcion*, 983 F.2d at 391; *Carrillo*,1998 WL 778311 at *2; *Callahan*, 551 F.2d at 737.  The trial court exercised a reasonable limitation in preventing the presentation of unfounded questions to the jury.

As the United States Supreme Court has held: "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " *Van Arsdall*, 475 U.S. at 680.  Where, as here, defense counsel was unable to demonstrate a good faith basis for his attempted inquiry into a witness' alleged involvement in an unrelated prior crime, it cannot be said that the foregoing burden is satisfied.  In this case, the lack of a showing of good faith prevents a finding that counsel designed an appropriate cross examination aimed at demonstrating a prototypical form of bias.

In contrast to the instant case, the facts before the United States Supreme Court in *Van Arsdall* established a factual basis entitling the defendant to cross examination:

> In this case, however, the trial court prohibited *all* inquiry into the possibility that Fleetwood would be biased as a result of the State's dismissal of his pending public drunkenness charge. By thus cutting off all questioning **about an event that the State conceded had taken place** and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause.

*Van Arsdall*, 475 U.S. at 679 (bold emphasis added).  Here, defense counsel offered no evidence or explanation on the record to support his attempted line of questioning with Mr. Mason.

For the foregoing reasons, the undersigned recommends that the Court find that Grounds Four and Five lack merit.  They should be dismissed in their entirety with prejudice.

### v.    Ground Seven[4]

Lastly, in Ground Seven, Petitioner contends that he was denied due process of law when the

---

[4]    Recall, the undersigned recommended finding Ground Six to be procedurally defaulted. Therefore, it will not be addressed on the merits.

state post-conviction court made a credibility determination of the state's chief witness but the court was different than the court that tried his case.  ECF Dkt. #1.  Petitioner contends that Mr. Mason's affidavit recanting his trial testimony was sufficient to warrant a post-conviction evidentiary hearing.  ECF Dkt. #19 at 30.

This claim is not cognizable.  "[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer* 484 F.3d 844, 853 (6th Cir. 2007).  "[C]laims challenging state collateral post-conviction proceedings cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254, because the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Id*. (internal quotations omitted).  "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not result in  release or a reduction in time to be served or in any other way affect [a petitioner's]detention because [the Federal Courts] would not be reviewing any matter directly pertaining to his detention." *Id*. (internal quotations omitted).  Therefore, Ground Seven may be dismissed as non-cognizable.

Should the Court choose to proceed to analyze the merits of this claim, the undersigned notes that the appellate court conducted a thorough analysis, based primarily on state law governing post-conviction petitions:

> {¶ 8} "A postconviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 1994-Ohio-11. In postconviction cases, a trial court acts as a gatekeeper, determining whether a defendant will even receive a hearing. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679. In *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, the Ohio Supreme Court held that the trial court's gatekeeping function in the postconviction relief process is entitled to deference, including the court's decision regarding the sufficiency of the facts set forth by the petitioner and the credibility of the affidavits submitted. Accordingly, we review appellant's postconviction claims brought pursuant to R.C. 2953.21 under an abuse-of-discretion standard. *Id*. An abuse of discretion is more than a mere error in judgment, it implies that a court's ruling is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

> {¶ 9} In its findings of fact and conclusions of law, the trial court found that Mason's affidavit was not credible. Appellant argues that the judge was in no position to assess

-47-

Mason's credibility because he had no independent knowledge of Mason and did not preside over the trial. At the time appellant's petition for postconviction relief was decided, the judge who had presided over the trial had been appointed to the Federal District Court and was no longer available to hear the petition. Appellant argues that the new judge was in no position to assess the credibility of Mason's affidavit having no knowledge of Mason and not having been present at trial to view his testimony. Appellant further argues that he presented sufficient evidence to entitle him to a hearing. We disagree.

{¶ 10} "The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice." *Calhoun*, 86 Ohio St.3d at 284.

{¶ 11} The trial court's entry states that it reviewed the petition, the briefs and memoranda of the parties, the evidentiary materials filed, the files, records, and transcripts in the case prior to making its determination. There was sufficient information before the court for it to make an assessment of Mason's credibility without examining him. The trial court based its conclusion that Mason's affidavit lacked credibility upon it finding that there was nothing in the record to corroborate the bare assertions in Mason's affidavit that alleged a conspiracy between the police, the prosecutor, the court, and his own attorney.

{¶ 12} Our review of the record finds the evidence supports the trial court's finding. The evidence in the record demonstrates that Mason was not truthful. He admitted at trial to lying under oath about his age in connection with this case in an attempt to have his case decided in juvenile court. The jury was cautioned to weigh Mason's trial testimony with grave caution and great care. The same caution must be applied to Mason's sworn affidavit testimony. The trial court did not abuse its discretion in finding that without corroboration, Mason's affidavit lacked credibility.

{¶ 13} Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at 290. Appellant's petition was based upon Mason's affidavit. Having found the affidavit lacked credibility, the trial court did not err in dismissing the petition without hearing.

ECF Dkt. #5, Ex. 48 at ¶¶ 8-13.  The foregoing does not constitute an unreasonable application of clearly established federal law.  As explained in Section V(A), above,  Mr. Mason's affidavit can be discredited on a review of the document itself and the state court record.  Thus, no evidentiary hearing was necessary, and the state court did not unreasonably apply clearly established federal law.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground Seven in its entirety with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE:  January 7, 2011                          */s/ George J. Limbert*_____
                                                GEORGE J. LIMBERT
                                                UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.  L.R. 72.3(b).